12 F.3d 211
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Errol BEASLEY, Plaintiff-Appellant,
v.
DELTA AIR LINES, INC., Defendant-Appellee.
 No. 92-6583.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1993.
 
 On Appeal from the United States District Court for the Western District of Tennessee, No. 91-02213; McRae, J.
 W.D.Tenn.
 AFFIRMED.
 Before: MARTIN and RYAN, Circuit Judges; and MATIA, District Judge.*
 PER CURIAM.
 
 
 1
 Errol Beasley appeals the district court's grant of summary judgment for Delta Airlines in this action alleging racial discrimination in employment. Beasley filed suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e et seq., and 42 U.S.C. Sec. 1981, claiming that Delta discriminated against him by denying him a promotion. The district court found that Beasley had not shown Delta's business reasons for its decision to be pretextual. For the following reasons, we affirm.
 
 
 2
 * On June 12, 1974, Delta hired Errol Beasley, a black male, as a part-time skycap in Memphis, Tennessee. After receiving several promotions, Beasley began working as a reservation sales agent in Jackson, Mississippi, and was subsequently transferred to Atlanta, Georgia. Beasley's wife moved with him when he transferred from Memphis to Jackson, and from Jackson to Atlanta. After moving to Atlanta, Beasley requested and was granted a transfer back to Memphis because of family illness.
 
 
 3
 On September 3, 1985, Beasley began participating in Delta's Marketing Enrichment Program while working as a reservation sales agent in Memphis. This program allows Delta employees who express an interest in marketing to work in the marketing department on a temporary basis. Beasley's initial supervisor in the program was District Marketing Manager Dan Merrill, but after two months Merrill was replaced by Danny Quillen. Quillen, in turn, was supervised by Regional Marketing Manager Russell Gariota.
 
 
 4
 In January 1987, while still participating in the program, Beasley was temporarily assigned to work in cargo marketing in Atlanta. Although Beasley did not work directly under Gariota during that time, Beasley stated that they "talked all the time ... on a friendly basis," and that he believed that Gariota was "very supportive" of his advancement goals. Beasley also testified that Gariota had told Dan Quillen that Beasley had "a lot on the ball" and "could go places." After four and a half months in Atlanta, Beasley returned to Memphis.
 
 
 5
 In August 1987, Quillen was replaced by Nikki Giampapa as District Marketing Manager. In November, Giampapa rotated Beasley back to his former position as a reservations sales agent in Memphis. The decision to terminate Beasley's involvement in the Marketing Enrichment Program was made, according to Giampapa, because Beasley had already received several participation extensions, and Reservations Manager Dan Payne wanted others to have a chance to participate in the program. At the time, Beasley did not object to or express dissatisfaction with Giampapa's decision. However, Beasley now claims that his rotation back to reservations agent was due to a "power struggle" in the office, and that his alignment with Gariota and Quillen in that struggle caused a third person to submit "false information" to Giampapa on which she based her decision.
 
 
 6
 In January 1988, Beasley accepted a promotion to the position of junior analyst in leisure marketing in Atlanta, Georgia. According to Beasley, his wife originally intended to move to Atlanta with him, but chose not to leave her job after receiving a promotion from her employer. As a result, Beasley decided to commute from Atlanta to Memphis. In violation of company policy, Beasley had his secretary issue him a "positive space" pass so that he could guarantee a seat for his commute to and from Atlanta. Although he was not formally disciplined for this infraction, Beasley was warned not to repeat it. Nevertheless, on September 30, Beasley again had his secretary issue him another "positive space" pass, on which he forged his supervisor's name. Although this was a terminable offense, Delta decided to place Beasley on six month's probation, which would last until April 13, 1989.
 
 
 7
 At the end of 1988, Beasley requested a transfer from his marketing position in Atlanta back to a reservation sales position in Memphis. The reasons for this request were his wife's unwillingness to move to Atlanta and the fact that Beasley had a sick child who needed a liver transplant. Although it was apparently company policy not to grant transfers to employees on probation, Delta made an exception for Beasley and granted his transfer request.
 
 
 8
 In the fall of 1989, a position as cargo marketing representative became available in Memphis. Under Delta's national bid process, numerous applicants filed papers requesting the position, including Beasley. The minimum qualifications for the position were two years of college or equivalent sales experience, satisfactory performance in the employee's current position, good written and oral communication skills, and a businesslike appearance. Beasley told Nikki Giampapa that he was bidding on the position, and admitted that she encouraged him to do so. However, Giampapa expressed concern about Beasley's unwillingness to transfer from Memphis, because Delta prefers to promote individuals to marketing representative positions who are flexible and willing to transfer. The reason for this preference, in part, is that Delta selects district marketing managers from the marketing representative pool, and these managers are often assigned to different cities. Beasley stated that he would be able to move in the future, but admitted to Giampapa that he did not know when he would be willing to do so. In fact, at the time of his deposition almost two years later, Beasley stated that he was still unable to move.
 
 
 9
 The bid sheets for the open position were submitted to the Personnel Department, and six candidates were chosen for interviews. Beasley and Michael Denney, a white, male cargo department employee in Sarasota, were two of these six candidates. A four-member panel, which included Giampapa, interviewed the candidates and graded them in the areas of appearance, attitude, mobility, previous work record, aptitude, and written skills. On one interview sheet, written notations reflecting a lack of mobility were made after three candidates' names, including Beasley's.
 
 
 10
 After conducting the interviews, the panel compiled a group rating and submitted the names of the two highest-scoring candidates, Beasley and Denney, to Russell Gariota for the final decision. The record reflects that Denney received a somewhat higher overall rating than Beasley from the panel. Gariota ultimately chose Denney over Beasley for the open position. According to Gariota, Beasley was not chosen for the promotion because of his limited mobility, the lack of judgment he displayed in violating company policy, and his questionable commitment to marketing as evidenced by his request for a transfer out of marketing from Atlanta to Memphis.
 
 
 11
 After being denied the promotion, Beasley complained to Richard Ealey, the Equal Opportunity Director at Delta. Russell Gariota subsequently offered Beasley another job, outside the bid process, as a full marketing representative in Atlanta. Beasley refused this job offer and filed suit, claiming that he was denied the previous promotion because of his race. The district court disagreed and granted summary judgment for Delta, finding that Beasley had not shown Delta's reasons for denying him the promotion to be pretextual. This timely appeal followed.
 
 II
 
 12
 This court applies a de novo standard of review to the district court's decision to grant summary judgment. E.E.O.C. v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FedR.Civ.P. 56(e). In determining whether there is a genuine issue for trial, we must draw all reasonable inferences from the facts in the light most favorable to Beasley, as the non-moving party. Matsushita, 475 U.S. at 587.
 
 
 13
 In a discrimination action, the plaintiff has the initial burden of proving a prima facie case by a preponderance of the evidence. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). In the present case, it is undisputed that Beasley has proven a prima facie case under the four-element test described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff, as here, succeeds in establishing a prima facie case, the burden then shifts to the employer to state a legitimate, non-discriminatory reason for the contested decision. Id.; Burdine, 450 U.S. at 252-53; Burton v. Ohio, 798 F.2d 164, 165 (6th Cir.1986), cert. denied, 485 U.S. 964 (1988). Delta has stated the following legitimate reasons for its decision not to promote Beasley: (1) Beasley's lack of mobility; (2) his deliberate violation of company policy regarding "positive space" passes; and (3) a perceived lack of commitment to marketing.
 
 
 14
 Because Delta has articulated legitimate, non-discriminatory reasons for its decision, Beasley must now prove, by a preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. In addition, the plaintiff at all times bears the ultimate burden of proving that the employer intentionally discriminated against him. Id.; Burton, 798 F.2d at 166.
 
 III
 
 15
 Under the foregoing standards, we agree with the district court that Beasley has failed to present material evidence showing Delta's reasons for denying him the promotion to be pretextual. With respect to the first reason, mobility, Beasley admits that Nikki Giampapa expressed concern before the panel interview about his inability to relocate from Memphis in the future. At least two other candidates interviewed had notations next to their names, on the grading sheet, regarding mobility. Although the candidates were not asked about mobility in the interview, and were not notified that it was a criterion in the selection process, there is no evidence to show that it was not a factor in the panel's recommendation and Gariota's ultimate decision. Beasley argues that Michael Denney was also unable to relocate, as evidenced by his transfer request for family reasons to Tampa, but that this did not count against Denney. This contention is untenable given Denney's bid on the job in Memphis, which clearly indicated that Denney was mobile at the time the promotion decision was made.
 
 
 16
 Beasley's argument that the panel should have considered his past mobility is without merit, in light of his express admission that he was not able to relocate at the time the decision was made. Finally, Beasley's assertion that Giampapa "did not like [him]" had nothing to do with his race. Beasley attributed the alleged dislike on Giampapa's part to a "power struggle" in the office, and the fact that Beasley felt he knew as much about marketing as she did. These assertions are not sufficient to support a claim of pretext as to the mobility issue.
 
 
 17
 With respect to Delta's second reason for its decision, Beasley's violation of company "positive space" policy, Beasley argues that the panel and Gariota did not have his personnel records before them and therefore could not have known of the violation. However, Gariota testified that he was aware of the violation and that it was a factor in his decision. Beasley has not shown that Gariota could not have known of the violation from a source other than the personnel records, such as his position as Beasley's indirect superior at the time it was committed. There is no evidence to suggest that Gariota did not know of Beasley's actions in this regard when the promotion decision was made.
 
 
 18
 With respect to Delta's third reason for its decision, Beasley's apparent lack of commitment to marketing as shown by his transfer from Atlanta to Memphis, Beasley makes no argument other than the fact that his desire for the position is obvious, given his bid and participation in the Marketing Enrichment Program.
 
 
 19
 Beasley makes a number of other assertions in support of his contention that Delta's reasons for denying him the promotion, taken as a whole, are pretextual. First, he claims that he was more qualified for the job than Denney, who he describes as "minimally qualified." The record, however, reflects that Denney worked in cargo marketing in Sarasota and had experience making sales calls, one of the requirements of such a job. Beasley also admits that he has no personal knowledge of Denney's qualifications. We agree with the district court that this contention merely goes to the wisdom of Delta's decision to hire Denney instead of Beasley, and that it is insufficient to show discriminatory intent with regard to that decision.
 
 
 20
 Finally, Beasley advances a number of "unanswered questions," which in his view are questions of fact that Delta has failed to address, and that accordingly preclude summary judgment for Delta. These questions include the following: (1) why Denney's "late bid" did not exclude him from consideration; (2) to what extent marketing representatives at Delta have had to be mobile in the past; (3) why mobility was not stressed in the interview and posting for job bids; (4) what the policy is on probation issues during employee promotion consideration; and (5) where the panel and Gariota obtained the information regarding Beasley's violation of company policy and probation.
 
 
 21
 We note that there are two problems with this list of "unanswered questions." First, the burden of proof is on Beasley to show that Delta's reasons for denying him a promotion were pretextual, rather than on Delta to prove the opposite. Burdine, 450 U.S. at 253. There was no obligation on the part of Delta to adduce evidence addressing these questions once it articulated its legitimate, non-discriminatory reasons for the promotion decision. Second, Beasley presented no evidence to resolve these questions in his favor, although he had the opportunity to do so. For example, with respect to Denney's "late" bid, there is no evidence in the record to reflect that Delta's consideration of the bid was not in keeping with company policy, even assuming that the bid was late. Evidence relating to these questions easily could have been gathered by further examination of the witnesses at their depositions. Beasley's failure to affirmatively pursue this option precludes our consideration of these questions, as there are no material facts to support their implicit allegations.
 
 
 22
 To avoid summary judgment, a plaintiff must "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081 (11th Cir.1990) (citations omitted). Beasley has not met this burden, and his claims must therefore be dismissed.
 
 
 23
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation